# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JONATHAN AMADOR ACEVEDO, MITCHELL BRATTON, JEREMY BUSSE, STEPHEN PULLUM, ERIC MIGDOL, and JOSE GONZALEZ,** *individually and on behalf of all other similarly situated,* | : : : : : : | |
| **PLAINTIFFS,** | : | **CIVIL ACTION NO. 3:13-2529** |
| | : | **(JUDGE MANNION)** |
| **v.** | : | |
| **BrightView Landscapes, LLC, (f/k/a/ THE BRICKMAN GROUP LTD. LLC,)** | : | |
| **Defendant.** | : : | |

## MEMORANDUM

Currently before the court is the plaintiffs' amended, unopposed motion for preliminary approval of the parties' settlement agreement. (Doc. 118). Having reviewed and considered the motion, the memorandum in support of the motion, the parties' amended settlement agreement, the proposed notice for class settlement, and pertinent portions of the entire record in this litigation to date, the plaintiffs' motion is **GRANTED** and the court will preliminarily approve the parties' amended settlement agreement. The court will also preliminarily certify the State Settlement Class named in the parties' amended agreement. The plaintiffs' original, unopposed motion for preliminary approval of the original settlement agreement, (Doc. 104), and the parties joint motion for a hearing to discuss changes to the original agreement, (Doc. 115), are

**DENIED** as moot.

## I.   PROCEDURAL HISTORY & BACKGROUND

On October 8, 2013, named plaintiff, Jonathan Amador Acevedo ("Amador"), filed a putative, class action complaint, (Doc. 1), against the defendant, The Brickman Group Ltd. LLC ("Brickman"),[1] a national landscaping and snow removal company, alleging that, between October 8, 2010 and June 8, 2014, the defendant had a policy and practice of failing to pay its employees who were paid on a fluctuating work week basis all overtime compensation, in violation of the Fair Labor Standards Act, 29 U.S.C. §201, *et seq.* ("FLSA"), and Pennsylvania state wage and hour laws. Amador, on behalf of himself and all other similarly situated plaintiffs, sought all unpaid overtime wages, plus liquidated and/or punitive damages, an injunction requiring the defendant to cease unlawful practices under the state law claims, and reasonable attorneys' fees and costs. On December 20, 2013, with permission from the court, the defendant filed an answer to the complaint beyond the deadline to answer. (Doc. 21). The defendant denied all

_____

[1] The plaintiffs, in their motion, have advised the court that, due to recent corporate changes, the proper defendant in this action is now the legal entity BrightView Landscapes, LLC ("BrightView), formerly known as The Brickman Group Ltd. LLC ("Brickman"). (Doc. 118-1, at 1 n. 1). The parties' filings continue to refer to the defendant as Brickman, while the amended agreement refers to the defendant as BrightView. The court will direct the clerk to amend the caption in its final order.

allegations and asserted that Amador was properly paid under the FLSA.

On February 7, 2014, the parties filed a joint motion to stay discovery, to conditionally certify the FLSA claims as a collective action (the "Collective Group") under Section 16(b) of the FLSA, 29 U.S.C. § 216(b), to order notice of the action, and to permit mediation. (Doc. 33). On February 14, 2014, the court granted the joint motion and conditionally certified the FLSA claims in the action, the Collective Group. (Doc. 35). The Collective Group was defined as:

> All current and former employees in the United States who have worked for The Brickman Group and who, at any time between October 8, 2010 and the present, were paid a salary, but only received "fluctuating workweek"-type half-time overtime pay for hours worked over 40 hours in a workweek (meaning at a rate that decreased with each overtime hour worked, rather than at time-and-a-half their hourly rate), including but not limited to salaried landscape/crew/irrigation Supervisors and those in similarly titled positions.

Notice, with an opt-in consent form, was then sent to 1,360 Collective Group members. Ultimately, 417 Collective Group members filed opt-in consent forms, though not all of these forms were sent in by the agreed upon deadline.

Meanwhile, in an effort to reach settlement, counsel for the parties exchanged information and engaged in numerous discussions to address several issues involving class certification, the merits of the claims in the complaint, and the possibility of a class settlement. The parties also participated three full-day sessions of mediation in Philadelphia, Atlanta, and

Los Angeles between July 2014 and February 2015 with the Honorable Joel B. Rosen (Ret.), retired Magistrate Judge for the United States District Court of the District of New Jersey, and Hunter Hughes, Esq. During this settlement process, counsel for the plaintiff uncovered potential violations of wage laws in various other states and identified five more named plaintiffs that could be joined in the action, Mitchell Bratton, Jeremy Busse, Stephen Pullum, Eric Migdol, and Jose Gonzalez.

The parties ultimately reached a settlement. On May 29, 2015, with the concurrence of the defendant, the plaintiffs filed an amended complaint asserting the additional state law claims and including the additional named plaintiffs as class representatives of a putative state law class.[2] (Doc. 103). On the same day, the plaintiffs filed an unopposed motion to preliminarily approve the settlement agreement, with the settlement agreement attached.

On December 11, 2015, the court held a telephone conference with counsel for the parties to discuss several areas of concern regarding the settlement agreement and subsequently ordered the parties to submit letter briefs regarding these areas of concern. (Doc. 110). On July 6, 2016, the

---

[2] The additional state law claims added to the amended complaint included violations of the laws of Colorado, Connecticut, Delaware, Florida, Georgia, Illinois, Indiana, Kansas, Kentucky, Maryland, Massachusetts, Michigan, Minnesota, Missouri, New Jersey, New York, North Carolina, Ohio, Oregon, Rhode Island, South Carolina, Tennessee, Texas, Virginia, Washington, and Wisconsin, in addition to the claims asserted under the laws of Pennsylvania. (Doc. 103, ¶4).

parties submitted an amended settlement agreement redlining proposed changes to the original agreement. (Doc. 114).

On November 21, 2016, the court held another telephonic conference with the parties to discuss their proposed changes and lingering areas of concern regarding the amended agreement. At the end of that conference, the court directed the parties to file a formal, amended motion for preliminary approval of the settlement agreement after discussing and addressing the court's remaining issues with the agreement. On February 13, 2017, the plaintiffs filed the current amended motion, attaching their amended settlement agreement to the motion. (Doc. 118).

## II.    TERMS OF THE AMENDED SETTLEMENT AGREEMENT

The terms of the amended settlement agreement are attached to the current, amended motion as Exhibit 1. (Doc. 118-3). The amended agreement includes the original FLSA Collective Group that was preliminarily certified as a class and also includes a State Settlement Class. The Collective Group is defined exactly as it was for preliminary certification purposes. The "State Settlement Class," as provided in the amended agreement, is defined as follows:

> [A]ll individuals in Groups 1 and 2 (who worked in the states of Colorado, Connecticut, Delaware, Florida, Georgia, Illinois, Indiana, Kansas, Kentucky, Maryland, Massachusetts, Michigan, Minnesota, Missouri, New Jersey, New York, North Carolina,

Ohio, Oregon, Pennsylvania, Rhode Island, South Carolina, Tennessee, Texas, Virginia, Washington, Wisconsin) unless removed from the State Settlement Class by either (i) timely opting-out of the Settlement, (ii) being identified by the Claims Administrator as having his/her Notice of Settlement returned as undeliverable (and not subsequently delivered prior to the Claim Deadline following the Settlement Administrator's reasonable efforts as outlined in Paragraph 20(b)(4)), or (iii) for Group 2 members only, Defendant's decision to nullify this Settlement Agreement as to Group 2 members as set forth in Paragraph 44.

(*Id.* ¶18(bb)). The proposed State Settlement Class takes into account the added claims in the plaintiffs' amended complaint and must be, at a minimum, preliminarily certified before proceeding with the settlement.

## A. Settlement Groups and Distribution

The settlement divides all putative plaintiffs and named plaintiffs from the above two classes into two groups, Group 1 and Group 2. Group 1 includes all FLSA Collective Group members who filed an opt-in form, including all named plaintiffs, and all Collective Group members who worked in Pennsylvania, regardless of their opt-in status. Group 1 consists of approximately 476 individuals. Group 2 includes all remaining Collective Group members who did not file an opt-in form and who did not work in Pennsylvania. Group 2 is, essentially, a catch-all for all of those putative plaintiffs in the Collective Group who did not file an opt-in form, other than those who worked in Pennsylvania. Group 2 consists of approximately 839 individuals.

Settlement treatment per the parties' agreement depends on inclusion within a certain group. Group 1 members are guaranteed a minimum payment without further action and will be excluded only if the member submits a timely request for exclusion, thereby opting-out of the settlement. The defendant has agreed to pay a maximum of $3.25 million for Group 1 claims. After deducting class counsel attorneys' fees and costs, administrator fees and costs, and service awards, each Group 1 member is initially entitled to $150.00 as an award. After this initial set-aside award, the settlement administrator will determine how to distribute the remaining funds to Group 1 members by using a formulation that creates a per dollar share, taking into account the members' actual overtime pay during weeks the member was eligible to receive "fluctuating workweek"-type half-time overtime pay for hours worked over forty in a work week. This calculation will be based on the defendant's payroll and timekeeping data. The remaining funds will then be divided pro rata among Group 1 members based on their per dollar share figure.

The defendant has agreed to pay a maximum of $3.7 million for Group 2 claims. However, the defendant's actual gross payment for Group 2 claims will be based on the percentage of Group 2 members who timely submit a claim form—*i.e.*, if 30% of individuals in Group 2 opt in, then only 30% of the Group 2 maximum fund, or $1.11 million, would be the gross fund from which a portion would be going to Group 2 members. The net fund would be

7

determined after deducting attorneys' fees and costs, administrator fees and costs, and service awards.

Only Group 2 members who timely submit a claim form will be eligible to receive a settlement payment. Like Group 1 members, however, eligible Group 2 members will receive a minimum $150.00 set aside from the Group 2 net fund. The settlement administrator will then determine a per dollar share figure for eligible Group 2 members, which will be based on the defendant's previously produced payroll and timekeeping data. The settlement administrator will distribute the remaining funds pro rata based on the net amount in the Group 2 fund and each Group 2 member's per dollar share figure.

Also unlike the Group 1 settlement, the Group 2 settlement is subject to the defendant's unilateral option to void the agreement if more than thirty-one percent of Group 2 members become eligible to receive a payment. Paragraph forty-four of the parties agreement provides as follows:

> In the event the Group 2 Calculated Gross Settlement Fund ("the Gross Fund Total") exceeds one million one hundred and fifty thousand dollars ($1,150,000.00),[3] Defendant shall have the unilateral right to void this Settlement Agreement as to Group 2 members if it provides written notice of its intent to void as to Group 2 members to Class Counsel . . . . If the right to void is exercised in accord with the terms of this paragraph, all portions of the Settlement Agreement shall apply only to Group 1

---

[3] The void provision's trigger amount divided by the maximum gross fund allocated to Group 2 is thirty-one percent. $1,150,000.00/ $3,700,000.00 = .31 x 100 = 31%

members.

(Doc. 118-3, ¶44). The void provision, by its express terms, does not effect Group 1 members. The defendant's decision to void the agreement is optional, not mandatory. It also requires written notice of the intent to void.

If the defendant exercises its right to void the Group 2 settlement, the FLSA and state law claims of Group 2 members will be tolled up to forty days after the defendant's notice of intent to nullify the Group 2 settlement. However, a tolling agreement entered into by the parties on October 7, 2014 would expire on the day of the notice with respect to Group 2. (*Id*. ¶11). During the forty day extended tolling period, Group 2 members who submitted a claim form will be given thirty (30) additional days to submit a form consenting to join the collective action, *i.e.*, the Collective Group. (*Id*. ¶44). Group 2 members who do not opt-in within thirty days will be placed in the same position they were immediately before the original settlement motion was filed on May 29, 2015 and their claim form will be null and void. (*Id*.). The parties also stipulate that the amended complaint will be stricken and the original complaint be reinstated with respect to Group 2. (*Id*. ¶10). Group 1 final settlement will proceed, however.

Ultimately, Group 1 and Group 2 members who are eligible and participate in the agreement, either by opting in or not opting out, will release all FLSA claims and state law claims. Group 1 members would have to

explicitly opt-out to not be bound by the agreement, while Group 2 members need not take any action to be excluded. Presuming the void provision does not go into effect, Group 2 members who do not opt-in will not release any claims.

## B.   Notice, Tax Treatment, and Final Check Distribution

Within fourteen (14) days after the court's order preliminary approving the agreement, the defendant, in cooperation with class counsel, will provide the settlement administrator with (a) a list setting forth the name, last known address, and social security number of each of the Group 1 and Group 2 members previously identified; and (b) available payroll data already produced. Class counsel will provide any updated addresses for Group 1 and Group 2 members they may have received during the course of the action to the settlement administrator. Before mailing the settlement notice and claim form, the settlement administrator will also double check the accuracy of the addresses received using the U.S. Postal Service's National Change of Address database and other public, electronic databases.

The settlement administrator will mail copies of the settlement notice to all members and will include a claim form for all Group 2 members, with an enclosed self-addressed postage prepaid return envelope. The forms will be provided in both English and Spanish. Claim forms will also be available for

10

download by link on the settlement administrator's website.

Any settlement notice returned to the settlement administrator with a forwarding address will be re-mailed. In addition, twenty-one (21) days after the settlement administrator initially mails the settlement notices, the settlement administrator will mail a reminder notice to Group 2 members who have not returned a claim form and have not requested exclusion from the settlement.

Group 1 and Group 2 members will then have thirty (30) days from the initial mailing of settlement notices and claim forms to object to the settlement and may do so by providing a written statement to the settlement administrator on or before the thirty day deadline. Those in the State Settlement Class who wish to exclude themselves from the claims based on state law may do so by providing a written statement to the settlement administrator on or before the thirty day deadline. Group 2 members will have sixty (60) days from the time the claim form is initially mailed by the settlement administrator to submit an executed claim form needed to receive a settlement award. Those eligible to receive an award will receive a check fifteen (15) days after the effective date in the agreement. This effective date is defined as thirty (30) days after final approval of the settlement agreement or the first business day after affirmance on appeal and/or the settlement approval decision is no longer subject to appeal and the time for reargument,

appeal, or review has expired.

Group 1 and Group 2 members will have their settlement award treated the same for tax purposes. Fifty percent (50%) of the award will be treated as wages and the settlement administrator will withhold federal and state income and employment taxes. The remaining fifty percent (50%) will be treated as non-wage liquidated damages reported on an IRS Form 1099. Release language will also be included on all settlement checks as follows:

> By signing and cashing this check, I hereby consent and agree to join this lawsuit, and I hereby opt in to become a plaintiff in this lawsuit and consent to be bound by the collective and class action settlement. I further affirm my release of Brightview Landscapes, LLC,[4] (F/K/A The Brickman Group LTD, LLC) and any "releases" of the "Released FLSA Claims" and the "Released State Law Claims" as those terms are defined in the Settlement Agreement approved by the Court . . . . I also affirm that I will not sue or otherwise assert any of the "Released FLSA Claims" or the "Released State Law Claims" against the Releasee.

(*Id*. ¶20).

Mailed checks will remain valid and negotiable for 180 days after issuance and may be automatically cancelled if not cashed within that time. If administratively feasible, funds from uncashed checks will be redistributed to eligible Group 1 and Group 2 members. If it is not administratively feasible to do so, uncashed check funds will revert to a qualified settlement fund. Within 210 days from the date of issuance, the settlement administrator will

---

[4] *See* n. 1, *supra*.

distribute the funds in the qualified settlement fund to plaintiffs' counsel to be held in a trust account for the applicable state statutory period for contract claims. No amount from the uncashed checks would revert to the defendant. The plaintiffs' counsel would update the court within a year on the status of unclaimed funds. (*Id*. ¶41).

### C.    Fees, Costs, and Service Awards

The settlement administrator has been identified as Dahl Administration ("Dahl"). Dahl has agreed to administer the settlement for fees not to exceed $17,470.00. The original named plaintiff, Amador, will receive a service award in the amount of $5,000.00. The remaining named plaintiffs will each receive a $1,000.00 service award. These amounts will be taken pro rata from the Group 1 and Group 2 qualified fund.[5] If, however, the defendant exercises its right to void the Group 2 settlement, the funds will be taken from the Group 1 qualified fund only. (*Id*. ¶30(a), (c)).

Class counsel will receive attorneys' fees in an amount no more than one-third of the Group 1 gross settlement amount from the Group 1 qualified fund, with a maximum amount of $1,083,333.33. Class counsel will also

---

[5] The gross fund will be labeled a qualified fund after it is handed over to the settlement administrator. Upon receipt of the funds, the settlement administrator will satisfy all Internal Revenue Service ("IRS") regulations needed to convert it into a "Qualified Settlement Fund" as defined by IRS regulations. (Doc. 118-3, ¶28).

receive no more than one-third of the Group 2 calculated gross settlement fund from the Group 2 qualified fund, which will be determined based on the amount of Group 2 members who opt-in and become eligible. The court will make a final determination of the attorney's fees at the Final Approval Hearing.  If the defendant exercises its right to void the Group 2 settlement, only the payment with respect to Group 1 will be distributed. (*Id*. ¶30(b)).

Class counsel will also receive reimbursement of their out-of-pocket costs approved by the court in an amount not to exceed $65,000.00, which will be paid pro rata from the Group 1 and Group 2 qualified funds. If the defendant exercises its right to void the Group 2 settlement, the entire payment of these costs will be taken from the Group 1 qualified fund. (*Id*.). Class counsel will file a separate motion for approval of attorneys' fees and costs prior to the court's final fairness hearing.

## III.   LEGAL STANDARDS

### A.   Preliminary Certification of a Rule 23 Class for Settlement

Federal Rule of Civil Procedure 23(d) enables a court to certify a Rule 23 class for settlement purposes. *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Products Liab. Litig.*, 55 F.3d 768, 794 (3d Cir. 1995). When presented with a request for preliminary certification of a class and settlement of that class simultaneously, the court should be mindful of the requirements of Rule

23(e). Rule 23(e) allows a settlement of a Rule 23 certified with class with court approval only. FED. R. CIV. P. 23(e). Rule 23(e) also directs the court to send notice to all class members who would be bound by the settlement. FED. R. CIV. P. 23(e)(1).

The process for certification of a settlement class is not specified in the rule. Court's are often guided by the Judicial Center's Manual for Complex Litigation (Fourth) in directing these type of proceedings. *See In re Nat'l Football League Players Concussion Litig.*, 775 F.3d 570, 580–81 (3d Cir. 2014). Looking to the Manual for Complex Litigation, the Third Circuit Court of Appeals has approved the court's making a preliminary finding that the proposed class meets the requirements of Rule 23. *Id*. at 582 (citing MANUAL FOR COMPLEX LITIGATION §21.632 (4th ed. 2004). This preliminary determination allows the court to direct notice to the proposed class. "The preliminary determination of a proposed class is therefore a tool for settlement used by the parties to fairly and efficiently resolve litigation." *Id*. at 583. A final certification can then be issued at a later date, after notice has been provided to those included in the proposed settlement class. *Id*. at 583.

## B. Preliminary Approval of Class Action Settlement Agreements

Preliminary approval of a class action settlement "establishes an initial presumption of fairness when the court finds that: (1) the negotiations

15

occurred at arms'-length; (2) there was sufficient discovery; (3) the proponents of the settlement are experienced in similar litigation; and (4) only a fraction of the class objected." *In re Gen. Motors Corp.*, 55 F.3d at 785. While the above factors specifically deal with settlement of a class action under Rule 23, the court finds these factors equally applicable to the settlement of an FLSA collective action as well. *See In re Chickie's & Pete's Wage & Hour Litig.*, No. 12-6820, 2014 WL 911718, at \*2–3 (E.D. Pa. Mar. 7, 2014) (looking to Rule 23 factors for final approval of an FLSA settlement agreement)*; Brown v. TrueBlue, Inc.*, No. 1:10-cv-00514, 2013 WL 5408575, at \*2 (M.D. Pa. Sept. 25, 2013) (same); *Dino v. Pennsylvania*, No. 1:08-cv-01493, at \*3–4 (M.D. Pa. 2013) (same).

A preliminary approval is just that, preliminary. It is not a finding that definitively determines the elements of fairness, adequacy, and reasonableness needed for final approval of class action settlements under *Girsch v. Jepsen*, 521 F.2d 153 (3d Cir. 1975). Nor does it definitively establish that the FLSA settlement, specifically, is a "fair and reasonable resolution of a bonafide dispute" under *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1355 (11th Cir. 1982), a case often cited as the standard for final approval of FLSA settlements. *See id.*; *see also Brumley v. Camin Cargo Control, Inc.*, Nos. 08-1798 (JLL), 10-2461 (JLL), 09-6128 (JLL), 2012 WL 1019337, at \*2 (D.N.J. Mar. 26, 2012) (collecting cases applying

*Lynn's Food Stores* for the appropriate standard to be applied to final approval of FLSA settlement agreements).

## IV.   DISCUSSION

### A. Preliminary Certification of the State Settlement Class

The State Settlement Class included in the parties' settlement agreement appears, upon preliminary review, to meet the requirements of Rule 23. In order to certify a settlement class under Federal Rule of Civil Procedure 23, the court must find that the settlement class satisfies the requirements of Rule 23. *In re Gen. Motors Corp.*, 55 F.3d at 799. These requirements include that of numerosity, commonality, typicality, and adequacy of representation. *See* FED. R. CIV. P. 23(a); *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 527 (3d Cir. 2004). In addition, the proposed class must meet one of the requirements of Rule 23(b)*. In re Warfarin*, 391 F.3d at 527.

The plaintiffs here seek certification under Rule 23(b)(3). This rule allows certification where "questions of law or fact common to class members predominate over any questions affecting only individuals members" and where the court finds that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." FED. R. CIV. P. 23(b)(3). These two requirements are commonly referred to as predominance

and superiority. *In re Constar Int'l Inc. Sec. Litig.*, 585 F.3d 774, 780 (3d Cir. 2009).

The State Settlement Class appeared to satisfy the numerosity requirement because it includes more than one thousand people who will receive notice of the settlement. There are factual issues common to all State Settlement Class members regarding the defendant's overtime compensation practices. The plaintiffs' claims are typical of the State Settlement Class Members' claims, in that they and all other State Settlement Class Members were allegedly subject to the defendant's alleged improper overtime compensation practices in violation of state law. The plaintiffs are adequate class representatives who appear to have no conflicts with the State Settlement Class members. Therefore, the State Settlement Class appears to satisfy the requirements of Rule 23(a).

The superiority and predominance requirement of Rule 23(b)(3) also appear satisfied. Treatment of this litigation as a class action is superior to resolution through hundreds of separate individual proceedings throughout a variety of different states. Class treatment enhances judicial efficiency and will likely maximize recovery. With respect to predominance, the court recognizes that the class claims include state law claims under a variety of laws—27 state law regimes to be exact. However, there is no suggestion that the claims under this different regimes are novel or complex. *See Knepper v. Rite Aid*

*Corp.*, 675 F.3d 249, 259 (3d Cir. 2012) (holding that opt-in FLSA collective claims are not inherently incompatible with opt-in Rule 23 class claims based on state law that are joined in the same action). Further, when certifying a settlement class, the court "need not inquire whether the case, if tried, would present intractable management problem" as directed by Rule 23(b)(3)(D). *Amchem Prod. Inc. v. Windsor*, 521 U.S. 591, 620 (1997). Thus, it is probable that the State Settlement Class will satisfy the requirements of Rule 23(b)(3), in addition to the requirements of Rule 23(a).

In light of the above, the court will preliminarily certify the State Settlement Class for settlement purposes and for the purpose of sending notice under Rule 23(e). The court reserves its finding on final certification until after the fairness hearing. A more thorough certification analysis will be provided after the State Settlement Class members have been provided with notice of the action and have had an opportunity to object to the settlement.

### B.   Preliminary Approval of the Amended Settlement Agreement

The court will also preliminarily approve the amended settlement agreement. (Doc. 118-3). In making this determination, the court has considered the following: (1) the negotiations occurred at arms'-length; (2) there was sufficient discovery; and (3) the proponents of the settlement are experienced in similar litigation. *In re Gen. Motors Corp.*, 55 F.3d at 785.

The parties have engaged in lengthy mediation over a period of three full days with the Honorable Joel B. Rosen (Ret.) and Hunter Hughes, Esq. In addition, the parties have held two telephonic conferences with the court to address the outcome of those settlement discussions and the agreement reached. The parties have made amendments to their original agreement in an effort to reach a fair compromise and have spent significant time reaching and drafting the current agreement.

There was also sufficient discovery to reach a fair compromise. The amended agreement itself states that the defendant produced the following information during the settlement process:

(1)   [A]n electronic spreadsheet setting forth the dates of employment in which Collective Group members worked in the position at issue;

(2)   Employee Earnings Detail history Reports and weekly pay data for each calendar year in which an employee worked in the position at issue during the applicable time period;

(3)   [A]ll documents summarizing or describing the policies and procedures for compensating Collective Group members in the form of wages, bonuses, overtime compensation, and all other forms of compensation during the applicable period;

(4)   [P]olicies or practices applicable to Collective Group members with respect to time-keeping and compensation;

(5)   [J]ob descriptions for the Collective Group members;

(6)   Department of Labor audit, evaluations, and reports; and

(7)   [A] sample of personnel files.

20

(Doc. 118-3, ¶4). The court finds that the information exchanged would allow the parties to come to a fair agreement in this particular wage law dispute with the defendant.

The court is also satisfied that the attorneys in this action are experienced in this particular type of litigation. Class counsel Shanon J. Carson with the law firm Berger & Montague, P.C. provided a declaration to the court with the firm's resume attached as an exhibit. (Doc. 118-4). Attorney Carson currently serves as lead or co-counsel in employment and collective actions in federal courts around the country. (*Id.* ¶3). Berger & Montague, P.C. has represented clients in major class action cases for over 40 years. (*Id.* ¶3). The firm's resume attached as an exhibit supports this finding. (*Id.* Ex. A). Attorney Carson believes that the amended settlement agreement is fair to the plaintiffs and offers significant advantages over continued litigation. (*Id.* ¶11). Plaintiffs' co-counsel with the law firm Head Law Firm, LLC did not provide the court with a similar declaration or firm resume. The court is confident, however, that the plaintiffs interests were adequately represented during settlement given the expertise of Attorney Carson and Berger & Montague, P.C. in this type of litigation.

The court finds that the amended settlement agreement should be preliminarily approved based on the information provided to the court and

finds that the agreement was reached in an extensive, arms'-length process that occurred with the experience of counsel after sufficient discovery.[6] The court will schedule a final fairness hearing needed to evaluate the amended settlement agreement under the standard set forth in *Girsch* and *Lynn's Food Stores.*

## C.    Proposed Schedule and Notice

Lastly, the court will preliminarily approve Dahl as the settlement administrator to proceed with the settlement process agreed to by the parties and as set forth in their proposed schedule for completing settlement. The court will also direct notice to Group 1 and Group 2 members as set forth in the parties proposed notices.

The court finds that the proposed notice to class members satisfies the requirements of Rule 23(c)(2)(B) and Rule 23(e)(1). The parties attached the proposed notice form and Group 2 opt-in form with their motion. (Doc. 118-3, Exs. A–C). A different form will be mailed to those members in Group 1 as compared to members in Group 2. The forms advise the members about the settlement and release, how to object or opt-out, and, in the case of Group 2,

---

[6] The court is not able to evaluate the final factor in its preliminary determination: whether only a fraction of class members objected. *In re Gen. Motors Corp.*, 55 F.3d at 785. The court will reassess this factor in its final determination after notice is provided to class members, in addition to the factors set forth in *Girsch* and *Lynn's Food Stores*.

what must be done in order to become eligible for a settlement award. It also provides information for class counsel in the event a member has questions. The court also notes that notice was sent to 1,360 of the defendant's employees specifically for the FLSA action, the Collective Group, in February 2014. In light of these circumstances, the court finds that the proposed notice is the best practicable form of notice to inform the members of the state law settlement and to proceed with the settlement for all claims in a timely and efficient manner.

## V.    CONCLUSION

Accordingly, the plaintiffs' amended, unopposed motion for preliminary approval of the parties' settlement agreement, (Doc. 104), is **GRANTED**. The parties' amended settlement agreement is preliminarily approved and the State Settlement Class named in the agreement is preliminarily certified as a Rule 23 class. A final fairness hearing will be scheduled by the court. In accordance with the parties proposed schedule, ten days prior to the final fairness hearing, the parties shall file an motion for final approval, at which time the parties should also seek final certification of the FLSA Collective Group and State Settlement Class. The plaintiffs' original, unopposed motion for preliminary approval of the parties' settlement agreement, (Doc. 104), and

the parties joint motion for a hearing to discuss changes to the original agreement, (Doc. 115), are **DENIED** as moot.


s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**


**DATED: March 21, 2017**

O:\Mannion\shared\MEMORANDA - DJ\CIVIL MEMORANDA\2013 MEMORANDA\13-2529-01.wpd

24